UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL S. WASSERMAN,<br><br>Plaintiff,<br>v.<br><br>CITY OF LONG BEACH, NY, CITY OF LONG BEACH POLICE DEPARTMENT RONALDALD WALSH, DONNA M. GAYDEN, BRIAN VAIS, SIMONE M. FREEMAN, JOHN DOE POLICE OFFICERS 1-4,<br>Defendants. | Civil Action No. 21-2466<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Michael S. Wasserman, by and through his attorney Victor M. Feraru, as and for its Complaint against Defendants upon information and belief alleges:

## PARTIES

1. Plaintiff Michael S. Wasserman is and at all times relevant to this Complaint, an individual residing in the Town of Long Beach, New York.

2. Defendant City of Long Beach, New York ("City) is a municipality located in the County of Nassau, New York and maintains its principal office in the County of Nassau. The Long Beach Police Department is an agency of the City charged with law enforcement. At all times relevant to this Complaint, Defendant City acting through the Long Beach Police Department ("LBPD") was responsible for the policy, practice, supervision, implementation, and conduct of all LBPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all LBPD personnel. In addition, at all times here relevant, Defendant

City was responsible for enforcing the rules of the LBPD, and for ensuring that the LBPD personnel obey the laws of the United States and the State of New York.

3. Defendant Ronald Walsh is and at all times relevant to this Complaint the Chief of the LBPD and has final policymaking authority with respect to the LBPD and responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the LBPD. He is sued in his individual and professional capacities.

4. Defendant Donna M. Gayden is and at all times relevant to this Complaint the City Manager of the City of Long Beach, New York, and is the chief policymaking official with respect to City policy, generally including LBPD policy. She is sued in her individual and official capacities.

5. Defendant Simone M. Freeman is and at all times relevant to this Complaint, the Corporation Counsel to the City of Long Beach, New York and is the chief policymaking official with respect to decisions to prosecute violations of Long Beach, New York, city code. She is sued in her individual and official capacities.

6. Defendant Officer Brian Vais is and at all times relevant to this Complaint a police officer with the LBPD, charged with being a front-line enforcer of the City Code. He is sued in his individual and professional capacities.

7. Defendants John Does 1-4, are officers of the LBPD whose names are unknown, upon information and belief, and at all times relevant to this Complaint John Does 1-4 are police officers with the LBPD, responsible for being front-line enforcers of the City Code. John Does 1-4 are sued in their individual and professional capacities.

## JURISDICTION AND VENUE

8. This is a civil action authorized by 42 U.S.C. §1983 seeking declaratory and injunction relief and compensatory and punitive damages to redress the deprivation under the color of city law, of rights secured to Plaintiff by the First Amendment to the United States Constitution. This Court's jurisdiction is conferred by 28 U.S.C. §§1331, 1343, and 2201.

9. This Action is properly filed in the United States District Court for the Eastern District of New York, as authorized by 28 U.S.C. §1391. Jurisdiction in this Action is not based upon diversity of citizenship. Each claim in this Complaint arose within the Eastern District of New York, and each of the Defendants' principal places of business is located within the Eastern District of New York.

## JURY DEMAND

10. The Plaintiff demands a trial by jury in this Action.

## STATEMENT OF CLAIMS

11. On or about February 21, 1989, Ord. No. 1689/89, § 1, was adopted by the City and codified as Chapter 3 Advertising, Signs and Posting Bills ("Chapter 3").

12. Chapter 3 §3-1(a) provides the legislative intent and purpose of Chapter 3 is to:

> [...] promote nad [sic] protect the public health, welfare, and safety by regulating existing and proposed outdoor advertising signs and outdoor signs of all types. It is intended to protect property values create a more attractive economic and business climate enhance and protect the physical appearance of the community. It is further intended hereby to reduce sign or advertising distractions and obstructions that may contribute to traffic accidents, reduce hazards that may be caused by signs overhanging or projecting over public rights of way provide more visual open space, and curb the deterioration of the communitys [sic] appearance and attractiveness."

13. Chapter 3 §3-7(d) provides that "[no] sign shall be erected, affixed or maintained within the perimeter of any public mall or upon any public street or public property."

14. Chapter 3 §3-3(e) enumerates exceptions to the prohibitions provided within Chapter 3, exempting "[t]he flags, emblems or insignia of any nation, governmental subdivisions, religious or fraternal organization or corporation."

15. Chapter 3 §3-3(e) provides a permit procedure for those wishing to erect, alter, paint with a new message, redesign, relocate, reconstruct, or maintain or cause to be erected altered painted with a new message, redesigned, relocated, reconstructed, and maintained any sign. However, the exemptions provided in §3-3 and §3-5 are expressly exempt from the permit requirement.

16. Plaintiff lived, lives, owns, and has owned multiple properties in the City since in or about the year 1994.

17. In or about the year 1994 until present day Plaintiff is a registered Republican voter who is outspoken about his political beliefs.

18. At all times relevant to this Complaint, Plaintiff has actively flown flags from his home, his cars, S.U.V.s, tabled, and otherwise displayed flags of organizations, political candidates, and other causes that he supports—Plaintiff's conservative viewpoints causes ire among those who disagree with his politics, just some of what Plaintiff has recently, since on or about March of 2021, endured displaying his viewpoints:

    a. groups of people outside of his car yelling expletives and raising his and her middle finger towards Plaintiff;

    b. an individual yelling expletive about Trump, spitting, while aggressively and offensively yelling at Plaintiff;

    c. an individual throwing handfuls of United States coins at Plaintiff while driving his vehicle at speeds greater than 20 miles per hour, in the City.

18. Throughout former President Donald Trump's first presidential campaign in the years 2016 and 2017, throughout his sole term as President of the United States of America, and his reelection campaign, many prominent learned political analysts and thinktanks have found Donald Trump to be one of the most polarizing Presidents by a steep margin.

19. In or about 2017 until present day, Plaintiff erects flags that express his support of Donald Trump, flags that express his dissatisfaction of the current President of the United States of America, the American Flag, among others, outside his home on East Broadway in the City. At all times relevant to this Complaint, the LBPD has purportedly received multiple Complaints concerning Plaintiff expression of his unpopular political views. The complaints are coming from constituents that Defendants are reliant on in future elections, and for general support.

21. At all times relevant to this Complaint, the majority of the leadership of the City are Democrats categorically opposed to former President Donald Trump, his message, and his supporters.

22. At all times relevant to this Complaint, Plaintiff displays flags from his car that express his support of Donald Trump, flags that express his dissatisfaction of the current President of the United States of America, the American Flag, among others, outside his home on East Broadway in the City. Annexed hereto are photographs of the flags outside Plaintiff's home, marked as Exhibit 1.

21. On or about March 16, 2021, at least three unnamed LBPD officers, joining Defendant Ronald Walsh, came to Plaintiff's residence, and asked if Plaintiff would reposition a flag critical of President Joe Biden from Plaintiff's car, onto his home, where it would offend passersby less. At the same time, the LBPD Police Officers informed Plaintiff that flying flags connected to Plaintiff's vehicle violated Chapter 3 §3-7(d) of the City code. Plaintiff disagreed

with the LBPD office's analysis of Chapter 3 §3-7(d) as his flags met the exceptions provided in Chapter 3. However, out of respect for the LBPD, Plaintiff temporary repositioned the anti-Biden flag from his vehicle onto his home. The LBPD officers on the scene informed Plaintiff that if Plaintiff were flying any other flag besides those supportive of former President Trump and against current President Joe Biden, that the Officers would not be at Plaintiff's residence.

22. On or about March 21, 2021, Plaintiff flew a Trump for 2024 America First Flag, the American Flag, and a Thin Blue Line flag from his vehicle outside of his residence. Shortly thereafter, Defendant Brian Vias arrived at Plaintiff's home. Although Plaintiff again said that he would remove the above-mentioned flags from his vehicle (until Plaintiff could obtain a legal opinion as to the legality of the LBPD's actions), Defendant Brian Vias issued Plaintiff a summons for violating Chapter 3 §3-7(d)—telling Plaintiff that he "had no choice," but to issue the Summons, indicating that the order to issue a summons to Plaintiff came from his superiors. All three of the flags mentioned herein are and continue to be the subject of considerable discourse, fiery public debate throughout the United States of America, and within the City. Most notably, any flag supporting former President Donald Trump. Annexed hereto are photographs of the flags flown from Plaintiff's car, marked as Exhibit 2.

23. On or about March 21, 2021, when LBPD arrived and cited Plaintiff for violations under Chapter 3 §3-7(d), *the flags in question fell under the exemption to Chapter 3§3-7(d)*, in that the flags were flags of a nation (the flag of the United States of America), and corporations (the Thin Blue Line Foundation and the Save America President Donald J. Trump reelection Campaign).

24. At the same time, the LBPD arrived and cited Plaintiff as described above, at least seven (7) flags, in addition to Plaintiff's, were flying within the City, that using Defendants'

interpretation in issuing Plaintiff a summons for the flags he displayed, were at the same time in violation of the various sign provisions applicable to Chapter 3. However, Plaintiff has been the *only* individual since the inception of Chapter 3 to have ever been issued a Summons, for flying flags that fall under the exemptions enumerated in Chapter 3—and one of only two people to ever be issued a summons under Chapter 3 during the life of Chapter. Annexed hereto are the FOIL results from the City concerning Chapter 3 §3-7(d) violations issued by LBPD in the past 22 years, marked as Exhibit 3.

25. The fact that above mentioned flags were in plain view and the LBPD had actual or constructive notice, using the same interpretation of Chapter 3 as the LBPD applied in Plaintiff's case, the LBPD chose not to take any action against any of the owners of those flags.

26. Among the signs, that using Defendants' interpretation of what constitutes a Chapter 3 §3-7(d) violation of Chapter 3 §3-7(d) were:

    a. An American flag flying on Park Ave, in the City. Photograph of that flag is annexed hereto as Exhibit 4.

    b. An American, Italian, and POW MIA flag flying on the main thoroughfare on Park Ave., in the City. Photograph of that flag is annexed hereto as annexed hereto as Exhibit 5.

    c. An American and POW MIA flag flying on the main thoroughfare on Park Ave., in the City. A photograph of that flag is annexed hereto as Exhibit 6.

    d. A series of flags flying on the main thoroughfare of the West End Pizzeria, in the City. Photograph of that flag is annexed hereto as Exhibit 7.

    e. An American flag flying on the main thoroughfare on Park Ave., in the City. Photograph of that flag is annexed hereto as Exhibit 8.

  f. Two American flags flying on the main thoroughfare on Park Ave., in the City. Photograph of that flag is annexed hereto as Exhibit 9.

  g. An American flag flying from the street on near the City boardwalk. Photograph of that flag is annexed hereto as Exhibit 10.

  27. With exception of Plaintiff's flags, none of the flags, nor any other flags erected, affixed, or maintained within the perimeter of any public mall or upon any public street or public property bearing emblems or insignia of any nation, governmental subdivisions, religious or fraternal organization or corporation within the City were, or have been in violation of Chapter 3 for at least the past 22 years.

  28. By issuing a Summons upon Plaintiff, dated March 21, 2021, Defendant Officer Brian Vais, under the Supervision of Defendant Ronald Walsh who is under the Supervision of Defendant Donna M. Gayden, abided by a policy to abandon the exemptions provided in Chapter 3, only as it pertains to Plaintiff, because Plaintiff's speech is unpopular, and Defendants receive complaints from his, her, its constituents. Defendant Simone M. Freeman as corporation counsel for Long Beach, NY, is taking part in Plaintiff's prosecution as evidenced by her office's decision to continue to pursue charging Plaintiff with having, "[e]rected signage on a public street," in violation of Chapter 3 §3-7(d)—she knew or should have known that the flags flown by Plaintiff fell under an exception to Chapter 3 §3-7(d). Annexed hereto is a copy of the Summons issued and referred for prosecution, as Exhibit 13.

  29. At all times relevant to this Complaint, Plaintiff informed Defendant Ronald Walsh that he would remove his flags so long as every flag erected, affixed or maintained within the perimeter of any public mall or upon any public street or public property bearing emblems or

insignia of any nation, governmental subdivisions, religious or fraternal organization or corporation were also removed.

30. At all times relevant to this Complaint, multiple unnamed LBPD officers informed Plaintiff that but for Plaintiff being an ardent, out, and loud, Donald Trump supporter, the LBPD would not be issuing him the Summons in violation of Chapter 3.

31. Defendant Officer Brian Vais's issuance of the above-mentioned Summons, and Defendant Corporation Counsel's decision to prosecute the same, was pursuant to a policy of the City, and its leadership, to suppress, punish and/or deter Plaintiff's public speech which supports and promotes the reelection of Donald Trump, or is otherwise critical of President of the United States Joe Biden.

32. As a result of Plaintiff's being prosecuted of violation as set forth in the March 21, 2021 Summons, Plaintiff was forced to either pay the Summons and shut up, or to appear in Court and hire counsel to defend himself. Plaintiff was forced to retain counsel to defend his rights.

33. The Defendants' selective enforcement of Chapter 3, as applied to Plaintiff's flags on his parked vehicle are different that the manner in which such conditions and requirements as applied to other citizens of the City are allowed. Specifically, Plaintiff flying flags that are exempted under Chapter 3 for which he has been prosecuted, was completely ignored. Plaintiff was singled out as being a staunch conservative. This is further evidenced by the lack of any prosecution of the any other flag flying member of the City whose flag falls under the exemptions of Chapter 3. Further, this is evidence by Defendants, as aforementioned, informed Plaintiff that but for his anti-President Biden, pro President Trump flags, there would not be any issues with his flags. Defendants hold Plaintiff to a higher, more precise, detailed standard specifically limiting the extent to which Plaintiff, and Plaintiff only, may fly flags that are exempted under Chapter 3.

34. The enforcement, as set forth above, was exacted upon Plaintiff pursuant to the policy of the City through Defendants who mold such policy into Action, to punish, and/or deter future unpopular speech by quiet literally ignoring its own exemptions under the Chapter 3.

35. In or about April of 2021, as illustrated by e-mails between City officials—the City officials see Plaintiff's rights, or even investigating such rights, as being as a joke—and further buttresses how City officials think of Plaintiff's constitutionally secured rights. In response to a Freedom of Information Act Request requesting responsive information on the prosecution of others under Chapter 3 for the past five (5) years, one City official writes to the other, "Are they joking?" In another exchange, one City official writes to another, "Don't shoot the messenger," making sport out of Plaintiff's requests, and by proxy, his rights. Attached are the email exchanges, as Exhibits 12 & 13.

36. Defendants' prosecution of Plaintiff concerning the March 21, 2021, charges set forth in above was arbitrary and capricious—and constituted a selective and unlawful enforcement of the City's code to 1) prevent and deter Plaintiff from engaging in political speech and 2) expressing his views on other matters of public concern, 3) and in retaliation against Plaintiff for insisting on engaging in such first amendment protected activity.

37. The enforcement and prosecution of the charges set forth in the March 21, 2021 summons, was in retaliation against Plaintiff for his having exercised his First amendment rights to freedom of speech and freedom to engage in political activity, and for the purpose of deterring Plaintiff and others similarly situation from exercising such rights in the future.

38. Defendants' conduct as set forth above constitute an ongoing, intentional

policy and practice of punishing Plaintiff for the exercise of his first amendment rights to free speech and political activity and to deter Plaintiff and others from exercising those rights in the future.

39. As a result of the unconstitutional conduct of the Defendants as set forth above, Plaintiff has been stigmatized, caused to suffer humiliation and anguish and pecuniary loss.

40. The acts of Defendants as set forth above constitute an ongoing, intentional policy and practice of punishing Plaintiff for the exercise of his First Amendment rights to free speech and political activity and to deter Plaintiff and others from exercising those rights in the future.

41. The conduct of the named Defendants as set forth above has had, and continued to have, an objective chilling effect upon Plaintiff's exercise of his First Amendment rights to free speech and political activity, in that a reasonable person in Plaintiff's position would perceive the Defendants' conduct as a threat of further punishment if he or she in the future attempts, through use of flags that espouse unpopular political speech, attempt to publicly express his or her political views.

42. As a result of Plaintiff's reasonable perception, Plaintiff has been deterred from expressing his political views and other positions about matters of public concern using flags.

43. By virtue of the chilling effect which the aforementioned conduct and policy has had, and continues to have, upon Plaintiff's First Amendment rights to freedom of speech and political activity, as well as the First Amendment right of others, Plaintiff has been and continues to be irreparably injured and will suffer further irreparable injury if the Defendants' conduct is not declared to be unconstitutional.

44. The unconstitutional conduct of the individual Defendants as set forth above was performed in bad faith and with a deliberate indifference to Plaintiff's constitutional rights.

43. By virtue of the foregoing, Plaintiff is entitled to compensatory damages against defendants.

44. By virtue of the foregoing, Plaintiff is entitled to awards of punitive damages against the individual defendants.

45. Plaintiff lacks an adequate remedy at law and is therefore also entitled to equitable relief.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

a) Issuing an order declaring that the Defendants' conduct violated and continues to violate Plaintiff's right to freedom of speech guaranteed by the First Amendment to the U.S. Constitution;

b) Awarding plaintiff compensatory damages against the Defendants;

c) Awarding plaintiff Punitive damages against the individual Defendants;

d) Award Plaintiff the costs and disbursement of this Action;

e) Award plaintiff reasonable attorney fees; and

g) Grant plaintiff such further and other relief as to this Court may seem just and proper.

Dated: April 3, 2021

Respectfully submitted,

By: s/Victor M. Feraru_____
    Victor M. Feraru, Esq. (*VMF 4072*)
KENNETH S. FERARU, P.C.
200 Old Country Road
Suite 2 South
Mineola, New York 11501
Tel: 516-535-3333

Fax: 516-535-4090
Email: victor@ferarulaw.com

*Attorneys for MICHAEL S. WASSERMAN*